United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKEY LEON SCOTT,<br><br>    Plaintiff,<br><br>v.<br><br>ERIC ARNOLD,<br><br>    Defendant. | Case No. 16-cv-06584-JST<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: ECF No. 1 |

Before the Court is Petitioner Rickey Leon Scott's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2554 to challenge the validity of his state criminal conviction. ECF No. 1. The Court will grant the petition.[1]

## I. PROCEDURAL HISTORY

On April 12, 2013, a San Francisco jury convicted Scott of first-degree murder, finding that he had used a deadly weapon in the commission of the offense. ECF No. 36-2 at 132. On September 27, 2013, the trial court denied Scott's motion for a new trial and sentenced him to 86 years to life, with the possibility of parole, under California's Three Strikes law, Cal. Penal Code § 667(e)(2)(A). *Id.* at 579-81. On July 24, 2015, the California Court of Appeal affirmed Scott's conviction in an unpublished opinion. *People v. Scott*, No. A139921, 2015 WL 4505784 (Cal. Ct. App. July 24, 2015). The California Supreme Court denied review on November 10, 2015. ECF No. 36-10 at 535.

Scott's pro se habeas state habeas petition, filed during the pendency of his appeal, was summarily denied by the California Court of Appeal on October 16, 2014. *Id.* at 588. He filed

---

[1] Petitioner's request for oral argument, ECF No. 46, is denied as moot.

two pro se habeas petitions before the California Supreme Court. The first of these was withdrawn at Scott's request on January 27, 2015. *Id.* at 590. The second was stricken for lack of jurisdiction on December 3, 2015. *Id.* at 659.

On March 22, 2016, Scott filed a pro se habeas petition in this Court pursuant to 28 U.S.C. § 2254. *Scott v. Arnold*, 16-cv-01391-JST, ECF No. 1. On November 14, 2016, pro bono counsel filed a second federal habeas petition on Scott's behalf, without knowledge of the first. ECF No. 1; ECF No. 23 at 2. On October 2, 2017, this Court construed the second petition as a motion for leave to amend, granted leave to amend, and deemed the second petition as an amendment to the first. ECF No. 30. Scott contends that he is entitled to a new trial under *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), and because the jury foreperson was actually biased against him.

## II. FACTUAL BACKGROUND

The following summary describing the factual basis for Scott's claims is taken from the California Court of Appeal's opinion:[2]

> The factual basis for the juror misconduct claim was that Juror No. 8, the foreperson, failed to disclose during voir dire that he had suffered a misdemeanor conviction in 2009 and was unhappy with his representation by his deputy public defender, who worked for the same office as appellant's trial counsel. The declarations, testimony and exhibits presented in support and opposition of the motion for new trial on this ground established the following:
>
> Juror No. 8 was convicted on July 22, 2009 of a misdemeanor count of making a criminal threat under Penal Code section 422 following a jury trial at which he was represented by deputy public defender Emily Dahm of the public defender's office in San Francisco. The charges arose from an incident in which Juror No. 8 had threatened a parking control officer while she was issuing him a citation. At the sentencing hearing held on September 25, 2009, Juror No. 8 was placed on probation and ordered to serve five days in county jail. Dahm filed a notice of appeal on Juror No. 8's behalf, and private attorney Marsanne Weese was appointed to represent him in the appellate division of the superior court. Weese filed a brief stating she could find no arguable issues on appeal and asking the appellate

---

[2] The Court has independently reviewed the record as required by AEDPA. *Nasby v. Daniel*, 853 F.3d 1049, 1052-54 (9th Cir. 2017). Based on this review, the Court finds that the state court's summary of facts is supported by the record, unless otherwise indicated in this order. A full recitation of the facts underlying Scott's conviction can be found in the California Court of Appeal's opinion at *Scott*, 2015 WL 4505784, at *1-4.

2

division to independently review the record under *People v. Wende* (1979) 25 Cal.3d 436, and the appellate division affirmed the judgment in an opinion filed March 28, 2011.

On May 2, 2011, Dahm appeared on behalf of Juror No. 8 in superior court, at which time the remittitur was "spread upon the minutes," that is, read into the record. Juror No. 8 was not present for this proceeding. He had not communicated with Dahm since his sentencing hearing in 2009 and was unaware of his appeal, the identity of his appointed counsel on appeal, or of the hearing at which the remittitur was spread. Juror No. 8 believed he had been wrongfully convicted and was highly dissatisfied with the representation provided by Dahm.

Juror No. 8 was called for jury service and assigned to the panel in appellant's case. Appellant was represented at trial by Jeff Adachi, the elected Public Defender of the City and County of San Francisco. Before voir dire began on March 18, 2013, the jurors completed a written questionnaire. Question No. 24 asked, "Have you, a family member, or a close friend ever been investigated, arrested, charged with, or convicted of any crime?" Juror No. 8 responded no. Question No. 27 asked, "What are your opinions, if any, of prosecutors and/or criminal defense attorneys?" Juror No. 8 wrote, "NA." Question No. 38 asked, "The judge will instruct you as follows: Do not let bias, sympathy, prejudice or public opinion influence your decision. You must reach your verdict without any consideration of punishment. Is there any reason you would be unable to comply with this order?" Juror No. 8 answered no. Question No. 61 asked, "Is there any matter not covered in this questionnaire that you think the attorneys or court should know when considering you as a juror in this case?" and "Is there any other reason why you might not be able to be an impartial judge of the facts for both the prosecution and defense in this case?" Juror No. 8 responded no to both parts of the question. He also indicated he did not know the prosecutor or "[d]efense lawyer and Public Defender Jeff Adachi." During voir dire itself, Adachi asked the prospective jurors whether anyone had negative feelings about defense attorneys, and Juror No. 8 did not raise his hand or otherwise reply. On March 21, 2013, the jury and six alternate jurors were impaneled.

On April 12, 2013, the day of the verdict in appellant's case, Dahm was in the courthouse on another matter and ran into Juror No. 8 in the hallway. Although Juror No. 8 did not recognize her at first (she had been pregnant and had longer hair when she represented him in 2009), they had a brief and friendly conversation. Juror No. 8 told Dahm he was going to go do his civic duty, which led Dahm to believe he had been called for jury duty, but she saw him later in the day outside the courtroom where appellant's case was being tried and learned at that time he was on appellant's jury. Dahm knew Adachi was trying the case and told Juror No. 8 she could not talk to him and asked him to contact her when the case was over. She emailed Adachi to advise him that a former client was on his jury, and Adachi reviewed Juror No. 8's questionnaire during the following week, after the jury had returned its verdict. Had Adachi known of Juror No. 8's prior relationship with his office, he would

3

have exercised a challenge and removed him from the jury panel.

> Juror No. 8 testified at the hearing on the motion for new trial under a grant of immunity and while represented by counsel. He explained that he had not disclosed his 2009 conviction on the jury questionnaire because over three years had passed and he was trying to forget about it. He felt he could be fair and impartial when he was selected to be a juror in appellant's case, though he fretted extensively over the possibility that an unconscious bias based on his experience with Dahm might have affected his jury service. He was not trying to cheat appellant out of a fair trial and he did not recall holding any of his negative feelings about Dahm against appellant. He did not have any negative feelings about appellant or Adachi, and he did not realize Adachi was from the same office as Dahm. He also did not realize that the prosecutor in appellant's trial was from the same office as the prosecutor in his misdemeanor case. Juror No. 8's daughter, who had witnessed her father's arrest in 2009, testified that he did not discuss the incident leading to his conviction very often because it was upsetting to his wife, but that he had alluded to it several times during 2012. Though her father sometimes told small lies and exaggerated things, she believed he was an honest person and would not vote to convict somebody else simply because he believed he himself had been wrongfully arrested and convicted.

*Scott*, 2015 WL 4505784, at *5-6.

At the July 16, 2013 hearing, Juror No. 8 testified that his feelings that he was wrongfully convicted and that he received inadequate representation from the public defender's office "were still there" when he filled out the written jury questionnaire. ECF No. 36-9 at 321-22. He acknowledged that he should have answered truthfully about his conviction. *Id.* at 321.

The California Court of Appeal accurately summarized the California statutes relevant to Scott's claim that Juror No. 8 should have been stricken for cause:

> Under California law, a juror may be challenged for cause for one of the following reasons: "(A) General disqualification—that the juror is disqualified from serving in the action on trial. [¶] (B) Implied bias—as, when the existence of the facts as ascertained, in judgment of law disqualifies the juror. [¶] (C) Actual bias—the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party." (Code Civ. Proc., § 225, subd. (b)(1)(A)-(C).) Code of Civil Procedure section 229 provides in relevant part: "A challenge for implied bias may be taken for one or more of the following causes, and for no other: [¶] . . . [¶] (b) . . . having stood within one year previous to the filing of the complaint in the action in the relation of attorney and client with either party or with the attorney for either party."

*Scott*, 2015 WL 4505784, at *8 (alterations in original).

4

The trial court found that the "questions presented in the questionnaire were relevant and unambiguous," that Juror No. 8 "had sufficient knowledge of the information to respond," and that the juror's answer to Question No. 24 "was false." ECF No. 36-2 at 548. However, it found that Scott could not have challenged the juror for cause because California Code of Civil Procedure section 229(b) "[did] not apply to the relationship between Juror 8 and Scott's counsel." *Id.* at 555. The trial court further concluded that, even if section 229(b) did apply, *McDonough* would not require a new trial because the court did "not find any evidence that Juror 8 harbored bias or prejudice against Scott, his attorney or, for that matter, against the People or the Office of District Attorney, which prosecuted him in 2009." *Id.* at 559.

The California Court of Appeal noted the parties' agreement that "Juror No. 8 committed misconduct when he did not reveal his 2009 misdemeanor conviction on his questionnaire." *Scott*, 2015 WL 4505784, at *7. The appellate court disagreed with the trial court and found that Scott's counsel "had an attorney-client relationship with Juror No. 8 in the 2009 misdemeanor case," and the court "assume[d] that attorney-client relationship still existed 'within one year previous to the filing of the complaint' in [Scott's] case, as required for Code of Civil Procedure section 229 subdivision (b) to apply," based on Dahm's May 2, 2011 appearance on Juror No. 8's behalf. *Id.* at *9; *see also id.* at *9 n.6 (observing that the complaint against Scott was filed on February 9, 2012). Nonetheless, the court affirmed the trial court's denial of Scott's *McDonough* claim. It first observed that *McDonough* did "not directly apply to a California criminal trial because it involved an implementation of a rule of federal civil procedure, rather than an interpretation of the federal Constitution." *Id.* at *9. It then concluded that, even if *McDonough* did apply, "and that [Scott's] trial counsel would have been entitled to excuse Juror No. 8 for cause if the prior representation by the public defender had been disclosed during voir dire, it does not follow that a new trial should be granted when the presumption of prejudice can be rebutted." *Id.* Based on its review of the record, the court found that "[a]ny bias implied under Code of Civil Procedure section 229, subdivision (b) was rebutted" because "there is no substantial likelihood Juror No. 8 was actually biased." *Id.* at *8, *11.

5

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision involves an "unreasonable application" of law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The district court reviews the "last reasoned decision" of the state court. *Ylst v.*

*Nunnemaker*, 501 U.S. 797, 803-04 (1991). Here, the California Supreme Court denied review. Thus, the last reasoned state-court decision is that of the California Court of Appeal.

## IV. DISCUSSION

Scott argues that he is entitled to a new trial under *McDonough*, 464 U.S. 548, because (1) "the jury foreperson failed to answer honestly a material question on *voir dire*" and (2) "a truthful response would have provided Scott with a valid challenge for cause under California Code of Civil Procedure § 229(b) for implied bias." ECF No. 1 at 7. He therefore contends that "the Court of Appeal's decision denying Scott's motion represents an unreasonable application of clearly established federal law as articulated by the Supreme Court in *McDonough*."[3] *Id.* at 8.

Scott first argues that the California Court of Appeal's conclusion that *McDonough* does not apply to state-court criminal trials was erroneous. This Court agrees. The Ninth Circuit and other circuit courts have consistently applied *McDonough* on habeas review of state-court criminal proceedings, and the Court is aware of no case in which a court refused to apply *McDonough* to such proceedings.[4] *E.g.*, *Smith v. Swarthout*, 742 F.3d 885, 892-93 (9th Cir. 2014); *Fields v. Brown*, 503 F.3d 755, 766-68 (9th Cir. 2007); *Conaway v. Polk*, 453 F.3d 567, 582-89 (4th Cir. 2006); *Gonzales v. Thomas*, 99 F.3d 978, 984-85 (10th Cir. 1996). As the Third Circuit concluded: "Although *McDonough* was a federal civil case, a state court decision failing to apply this same rule in a criminal prosecution would represent an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1)." *Williams v. Price*, 343 F.3d 223, 229 (3d Cir. 2003) (Alito, J.), *abrogated on other grounds by Pena-Rodriguez v.*

---

[3] Scott also argues that "the trial court's finding that the foreperson was not actually biased . . . was based on an unreasonable determination of the facts and was contrary to the foreperson's testimony expressing actual and explicit bias." ECF No. 1 at 8. The Court does not reach this argument because, as discussed below, it is persuaded by Scott's *McDonough* claim.

[4] The state court did not cite any such cases. Respondent cites *Montoya v. Scott*, 65 F.3d 405, 419 (5th Cir. 1995), and *Riggins v. Butler*, 705 F. Supp. 1205, 1210 (E.D. La. 1989), for the weaker proposition that "some courts have questioned whether *McDonough* applies on federal habeas review of a state criminal conviction." ECF No. 35-1 at 23 n.1. In *Montoya*, the Fifth Circuit applied *McDonough* after "assum[ing], arguendo, that a *McDonough* theory of juror bias would be sufficient to obtain federal habeas relief." 65 F.3d at 419. Similarly, in *Riggins*, the district court stated it was "not convinced that the *McDonough* standard is applicable in habeas cases," but it did not decide the question because it found that the petitioner could not meet that standard even if it did apply. 705 F. Supp. at 1210. Neither case held that *McDonough* did not apply.

*Colorado*, 137 S. Ct. 855 (2017). But in this case, the state court applied *McDonough* – albeit in dicta – and the Court therefore considers whether the state's application was unreasonable.

The Sixth Amendment "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see* U.S. Const. amend. VI. Due process requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "The presence of even one biased juror affects that right. Juror bias comes in three forms: actual, implied, and *McDonough* bias."[5] *United States v. Brugnara*, 856 F.3d 1198, 1211 (9th Cir. 2017) (citation omitted), *cert. denied*, 138 S. Ct. 409 (2017).

To obtain a new trial under *McDonough*, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. The parties do not dispute that these two prerequisites are clearly established Supreme Court law. Instead, their dispute centers on the import of the next sentence in the *McDonough* opinion: "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.* Respondent argues that this sentence added actual bias as third element to the *McDonough* analysis, and that the Ninth, First, and Fourth Circuits have agreed, thus rendering it impossible to conclude that Scott's view of *McDonough* was clearly established law. *See Clark v. Murphy*, 331 F.3d 1062, 1071 (9th Cir. 2003) ("The very fact that circuit courts have reached differing results on similar facts leads inevitably to the conclusion that the [state] court's rejection of [a habeas petitioner's] claim was not objectively unreasonable."), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

However, none of the four cases on which Respondent relies held that a movant must show

---

[5] Scott argues *McDonough* bias in this case. Thus, the Ninth Circuit's holding that "[t]here is no clearly established federal law regarding the issue of implied bias" does not preclude habeas relief. *Hedlund v. Ryan*, 854 F.3d 557, 575 (9th Cir. 2017); *see Rodrigues v. Davis*, No. 16-17069, 2018 WL 2439536, at *2 (9th Cir. May 31, 2018) (concluding, following *Hedlund*, that a habeas petitioner "is limited to demonstrating actual bias or *McDonough* bias").

actual bias to prevail on a *McDonough* claim. First, in *Dyer v. Calderon*, the Ninth Circuit explained that, under *McDonough,* the court "must determine whether [a prospective juror's] answers were dishonest and, if so, whether this undermined the impartiality of Dyer's jury." 151 F.3d 970, 973 (9th Cir. 1998) (en banc). But the court did not limit the second inquiry to determining whether the prospective juror harbored actual bias. To the contrary, the court held that it "need not resolve the actual bias question . . . because the implied bias issue is dispositive here." *Id.* at 981. The court concluded that "jurists of reason would all agree" that some jurors, including those with blood or business relationships with the litigants or lawyers, "should have been struck without stopping to inquire into their subjective state of mind." *Id.* at 985. The court explained:

> Of course, a juror could be a witness or even a victim of the crime, perhaps a relative of one of the lawyers or the judge, and still be perfectly fair and objective. Yet we would be quite troubled if one of the jurors turned out to be the prosecutor's brother because it is highly unlikely that an individual will remain impartial and objective when a blood relative has a stake in the outcome. Even if the putative juror swears up and down that it will not affect his judgment, we presume conclusively that he will not leave his kinship at the jury room door.

*Id.* at 982. Likewise, in *Pope v. Man-Data, Inc.*, the Ninth Circuit stated that, "[u]nder *McDonough*, a new trial is warranted only if the district court finds that the juror's voir dire responses were dishonest, rather than merely mistaken, and that her reasons for making the dishonest response call her impartiality into question." 209 F.3d 1161, 1164 (9th Cir. 2000). But, again, the court did not limit the impartiality inquiry to actual bias; it cited Justice Blackmun's concurrence in *McDonough* for the proposition that a movant may "demonstrate actual bias *or, in exceptional circumstances, that the facts are such that bias is to be inferred.*" *Id.* at 1163 (emphasis added) (quoting *McDonough*, 464 U.S. at 556-57 (Blackmun, J., concurring)).

In *Conaway*, the Fourth Circuit considered allegations "that Juror Waddell failed to disclose that he was co-defendant Harrington's double first cousin, once removed." 453 F.3d at 585. The court held: "Even where, as here, the two parts of the *McDonough* test have been satisfied, a juror's bias is only established under *McDonough* if the juror's 'motives for concealing information' or the 'reasons that affect [the] juror's impartiality can truly be said to affect the

9

fairness of [the] trial.'" *Id.* at 588 (alterations in original) (quoting *McDonough*, 464 U.S. at 556). But although the court structured its analysis into three steps, it did not require any showing of actual bias as part of the third step. To the contrary, the court concluded – without any inquiry into whether Wardell was actually biased – that "Juror Waddell's relationship to co-defendant Harrington *necessarily* affected the fairness of Conaway's trial." *Id.*

Finally, in *Faria v. Harleysville Worcester Insurance Co.*, the First Circuit explained that "[t]he binary test set forth in *McDonough* is not a be-all-end-all test to be viewed without context. Rather, the fundamental purpose of the test is to answer the crucial, overarching trial inquiry: was the juror biased and, if so, did that bias affect the fairness of the trial?" 852 F.3d 87, 96 (1st Cir. 2017). In considering a juror, Mr. Rieger, who was allegedly dishonest about his status as a felon who was ineligible for jury service, the court concluded that the Farias "have not asserted what particular bias Mr. Rieger harbored or how that bias would have affected the fairness of the trial. Instead, they merely speculate as to the bias and prejudice that resulted" and "have failed to adequately explain how bias, if any, tainted their trial result." *Id.* at 89-90, 96-97. But the court also noted that "Mr. Rieger's felon status, alone, *does not necessarily imply bias*, and accordingly his mere presence on the Farias' jury does not, without more, demonstrate an unfair trial result." *Id.* at 96 (emphasis added). Thus, actual bias was relevant only because Mr. Rieger's status as a convicted felon did not establish implied bias; the court's ruling cannot be read as requiring actual bias in all cases. Moreover, the court's discussion of bias is dicta because the it concluded that the Farias "have not demonstrated that Mr. Rieger answered dishonestly," thus failing to satisfy *McDonough*'s first prong, and because the court merely "[a]ssum[ed] *McDonough* applies on all fours," apparently without actually deciding that it did so. *Id.* at 95-96.

In short, none of the cases relied on by Respondent supports the proposition that actual bias is required to warrant a new trial under *McDonough*.[6] The Ninth Circuit does not endorse

---

[6] In addition, the Ninth Circuit confirmed last year that only "two showings" are required "to obtain a new trial based on *McDonough* bias: first, that the juror in question 'failed to answer honestly a material question on *voir dire*,' and second, 'that a correct response would have provided a valid basis for a challenge for cause.'" *Brugnara*, 856 F.3d at 1211 (quoting *McDonough*, 464 U.S. at 556). Similarly, the Fourth Circuit recently explained that a *McDonough* claim is distinct from an actual bias claim. *Porter v. Zook*, No. 16-18, — F.3d —, 2018 WL

10

that view, nor do *Conaway* and *Faria* create a circuit split.

But even if the above cases could be read in the manner asserted by Respondent, the Supreme Court re-stated the requirements of *McDonough* in 2014 without including any reference to actual bias. In *Warger v. Shauers*, the Court explained that "[i]f a juror was dishonest during *voir dire* and an honest response would have provided a valid basis to challenge that juror for cause, the verdict *must* be invalidated."[7] 135 S. Ct. 521, 525 (2014) (emphasis added) (citing *McDonough*, 464 U.S. at 556). This recitation removed any doubt that, at least as of the time of the *Warger* decision – which occurred before the California Court of Appeal's decision in this case – *McDonough* requires only two elements, and no more. By requiring a showing of actual bias, the California Court of Appeal therefore failed to apply clearly established federal law.

The Court of Appeal found that the parties did not dispute that Juror No. 8 was dishonest "when he did not reveal his 2009 misdemeanor conviction on his questionnaire." *Scott*, 2015 WL 4505784, at *7. The court further found that Scott's trial attorney "had an attorney-client relationship with Juror No. 8" and, based on his counsel's appearance at a May 2, 2011 hearing on Juror No. 8's behalf, "assume[d] that attorney-client relationship still existed 'within one year previous to the filing of the complaint' in [Scott's] case, as required for Code of Civil Procedure section 229, subdivision (b) to apply." *Id.* at *9. The court recognized that the California Supreme Court "described implied bias under Code of Civil Procedure section 229 as 'a presumption of bias that could not be overcome by a finding that [the juror] could be fair and impartial.'" *Id.* at *10 (quoting *People v. Ledesma*, 39 Cal. 4th 641, 669-70 (2006) (alteration in *Scott*)); *see also People v. Wheeler*, 22 Cal. 3d 258, 274 (1978) ("Implied bias arises when the juror stands in one of several relationships to a party, such as consanguinity, trust, or employment, or has been involved in prior legal proceedings relating to the parties or the case; in such

---

3679610, at *8 (4th Cir. Aug. 3, 2018); *see also id.* at *15 (not mentioning actual bias when explaining that "[t]o prove a juror bias claim under *McDonough*, the petitioner must show: (1) 'a juror failed to answer honestly a material question on *voir dire*,' and (2) 'a correct response would have provided a valid basis for a challenge for cause'" (quoting *McDonough*, 464 U.S. at 556)).

[7] Of the four circuit cases relied on by Respondent, only one – *Faria*, 852 F.3d 87 – post-dates *Warger*. The First Circuit made no mention of *Warger* in that case.

11

circumstances no proof of prejudice is required – it is inferred as a matter of law." (citation omitted)), *overruled on other grounds by Johnson v. California*, 545 U.S. 162 (2005). The court distinguished *Ledesma* only on grounds that "[t]he case says nothing about what should happen when a juror who should be subject to a challenge for cause based on one of the statutory grounds listed in Code of Civil Procedure section 229 actually sits on the jury and the issue is raised for the first time in a motion for new trial." *Scott*, 2015 WL 4505784, at *10. It did not hold that Juror No. 8 would not have been dismissed for cause if his relationship with the public defender's office had been raised during voir dire, and it apparently recognized that, had the truth of Juror No. 8's relationship with Scott's trial counsel come to light during voir dire – as it would have, but for Juror No. 8's dishonesty – Juror No. 8 would have been excused for cause. Under *McDonough*, this is where the state court's inquiry should have ended. The court determined that Juror No. 8 "failed to answer honestly a material question on *voir dire*" and that "a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. Consequently, "the verdict must be invalidated." *Warger*, 135 S. Ct. at 525.

## CONCLUSION

The California Court of Appeal's denial of relief under *McDonough* was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Scott's petition for habeas relief is therefore granted, and his conviction is vacated. Respondent shall release Scott from custody unless proceedings to retry him are commenced within ninety days of the date of this order.

In addition to the usual service on counsel of record, the Clerk shall send an informational copy of this order to the San Francisco District Attorney.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: August 24, 2018

_____
JON S. TIGAR
United States District Judge